UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALFRED W. COMER, JR.,<br><br>Plaintiff,<br><br>v.<br><br>LIAW, et al.,<br><br>Defendants. | CAUSE NO. 3:26-CV-933-CCB-SJF |

**OPINION AND ORDER**

Alfred W. Comer, Jr., a prisoner without a lawyer, filed a motion to reconsider the denial of his motion for preliminary injunctive relief. ECF 39. District judges have the discretionary authority to reconsider interlocutory orders any time before final judgment. *See Terry v. Spencer,* 888 F.3d 890, 892 (7th Cir. 2018); *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015). "The authority of a district judge to reconsider a previous ruling in the same litigation . . . is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571–72 (7th Cir. 2006) (citations omitted); *see also U.S. v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008) (noting that "the law of the case doctrine is a discretionary doctrine"). Reconsideration of an interlocutory order "serve[s] a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Res., Inc. v. Walker–Davis Publ'ns,*

*Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (citation omitted). It should be noted that these types of interlocutory motions are generally discouraged because:

> a district court's rulings are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure, and ill-founded requests for reconsideration of matters previously decided needlessly take the court's attention from current matters and visit inequity upon opponents who, prevailing in an earlier proceeding, must nevertheless defend their position again and again.

*Cima v. Wellpoint Health Networks, Inc.*, 250 F.R.D. 374, 386 (S.D. Ill. 2008) (cleaned up); *see also Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own . . . in any circumstance, although as a rule courts should be loath[] to do so in the absence of extraordinary circumstances.").

Comer is proceeding against the Warden of the Westville Correctional Facility (WCF) in his official capacity on a claim for permanent injunctive relief to ensure he is provided with constitutionally adequate medical treatment for his urinary tract infection. ECF 5 at 7. He is also proceeding against two medical professionals for damages for being deliberately indifferent to his serious medical condition by refusing to prescribe an antibiotic to treat his urinary tract infection in June 2026. *Id*. Comer filed a motion for emergency preliminary injunctive relief with his complaint. ECF 3. After briefing by the parties, the motion was denied on September 8, 2026. ECF 33. Comer subsequently filed his motion to reconsider on September 23, 2026. ECF 39.

In it, Comer begins by asserting generally that the court should not have relied on the third-party affidavit of Silverio Napules, III, the Health Services Administrator at WCF, because it contains hearsay. *See* ECF 13-1. He states, "The sole evidence offered by

the Defendants to prove their medical care was the affidavit of the Medical Administrator who is 'NOT' a doctor." ECF 39 at 2. This statement is demonstrably false, as the Warden also submitted almost sixty pages of medical records along with the affidavit. *See* ECF 13-2 through ECF 13-5. The affidavit summarizes the medical evidence in the record, which HSA Napules attests he has personal knowledge of based on his own review. While the court independently examined the medical records and did not rely solely on the affidavit, Comer's argument fails regardless. *See Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997) ("Affidavits are ordinarily inadmissible at trials but they are fully admissible in summary proceedings, including preliminary-injunction proceedings."); *see also S.E.C. v. Cherif*, 933 F.2d 403, 412 n.8 (7th Cir. 1991) ("[H]earsay can be considered in entering a preliminary injunction.").

The remainder of Comer's motion takes issue with virtually every paragraph of the denial order. The court has reviewed his arguments and finds that any disputes are not dispositive to the ultimate issue, would not have changed the decision to deny the motion for preliminary injunctive relief, and do not provide a basis to reconsider the denial. For example, the order states that Comer had a "consultation with Dr. James Jackson, an outside urologist," on May 12, 2026. ECF 33 at 2. Comer asserts he has "never seen an outside urologist name[d] Dr. James Jackson." ECF 39 at 3. While Comer is correct that Dr. Jackson is not an outside urologist—rather, he is a provider at WCF who documented the May 12th urologist visit (ECF 31-2 at 34–37)—he doesn't dispute that he saw an outside urologist on May 12th, nor could he as the medical records show he visited Dr. David Kraklau on that date. ECF 13-4 at 11–12. The fact that the order

contains a scrivener's error regarding the name of the specialist is not a valid basis for reconsideration.

Comer also argues that the visit "had nothing to due (sic) with Plaintiff's 'burning and pain' with urination" (ECF 39 at 3), but the outside medical records show Dr. Kraklau performed a urethroscopy to assess Comer's urinary retention, malodorous and turbid urine, and urethral stricture issues that day. ECF 34-4 at 11–12. Comer's characterization of the visit doesn't provide a basis for altering the denial order because it's undisputed he saw the specialist for his numerous urinary issues. Similarly, the court's order states that Comer was seen for a "wellness check related to his urinary issues" on June 5, 2026. ECF 33 at 3. Comer argues it wasn't a wellness check but rather an "urgent care" visit for the burning and pain in his penis. ECF 39 at 4. Regardless of the description of the encounter, it's undisputed that Comer's condition was assessed by a nurse, so reconsideration isn't warranted on this ground either. *See* ECF 13-2 at 26–27.

The court's order states that Comer was "discharged from Franciscan Health and instructed to follow-up with an outside urologist" after his emergency room visit on June 11, 2026. ECF 33 at 4. Comer argues, "I am a[n] incarcerated offender and the doctor and nurses did NOT tell me to follow-up with anyone. They only send (sic) a report back with the officer." ECF 39 at 5. Whether the Franciscan staff verbally told Comer of the discharge instructions is irrelevant to the ultimate issue considering the following facts are undisputed: 1) the after-visit summary indicates he should "follow-up with your urologist as outpatient;" and 2) he actually did follow-up with Dr.

Kraklau on June 30, 2026.[1] *See* ECF 13-3 at 1 and ECF 13-4 at 3–10. He claims he was "never" seen by "an outside urology for frequent urinary tract infection" and that he "was not evaluated by Dr. Kracklau the urologist" on June 30, 2026 (ECF 39 at 8), but those assertions are categorically refuted by the outside medical records. *See generally* ECF 13-4. Comer's arguments about the court's wording and his own characterization of the medical encounters don't suggest the denial order was erroneous. *See, e.g., Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022) (When assessing the merits related to a preliminary injunction request, the court need not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings.").

In addition to quibbles with wording such as those described above, Comer argues generally that Dr. Liaw and the Centurion medical staff were deliberately indifferent to his needs because they refused to provide him with an antibiotic for his urinary tract infection following his ER visit on June 11, 2026. However, as explained in the denial order:

> The record shows that Comer's medical providers considered whether antibiotic treatment was appropriate in light of his history of resistant urinary tract infections, pending urine-culture results, symptoms, outside medical provider information, and the distinction between symptomatic infection and colonization. Thus, the record establishes that the decision not to give Comer an antibiotic was a medically-informed decision.

---

[1] The urology office notes state the purpose of the visit was to "follow up after Cystoscopy" and to address the fact that he was "in the ED on 6/10 diagnosed with a UTI and a catheter was placed." ECF 13-4 at 3.

ECF 33 at 11. Accordingly, the court concluded the record didn't support a finding that a preliminary injunction was warranted because "it shows ongoing care and medical judgment regarding the appropriate course of treatment for his chronic urinary retention and urinary tract infection." *Id*. Nothing in Comer's current motion suggests that determination was erroneous. *See, e.g*, *Lewis v. McLean*, 941 F.3d 886, 894 (7th Cir. 2019) ("A treatment decision that's based on professional judgment cannot evince deliberate indifference.") (quotation marks and brackets omitted)); *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) ("[M]ere disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.") (citation and internal quotation marks omitted)).

Comer's motion also presents new evidence. However, instead of supporting his argument for reconsideration, the new evidence undermines it. He states in an affidavit that he has submitted additional sick care requests since his last reply, that Provider Riley ordered another urine culture, and that on August 20, 2026, he was "finally given antibiotic to kill the organism because the organism was sensitive to 'Linezolid.'" ECF 39-1 at 5; *see also* ECF 39-2 at 4 (prescription for Linezolid).[2] Comer argues that the alleged 90-day delay in receiving the antibiotics "supports a claim of deliberate indifference" against Dr. Liaw (ECF 39 at 16), but that is not the question before the

[2] "Linezolid is used to treat certain bacterial infections in many different parts of the body . . .." *See* https://www.mayoclinic.org/drugs-supplements/linezolid-oral-route/description/drg-20067254 (last visited Oct. 16, 2026).

court for purposes of Comer's request for a preliminary injunction. Rather, the question is whether Comer made a clear showing he is likely to succeed on his claim for permanent injunctive relief—namely, that the Warden ensures he is being "provided with constitutionally adequate medical treatment for his urinary tract infection." ECF 5 at 7. Not only does this new information suggest Comer is indeed currently receiving constitutionally adequate medical care, but it also appears to moot his request for immediate court intervention. *See, e.g., Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) ("mere possibility of success is not enough"); *Univ. of S. Ind.*, 43 F.4th at 791–92 (remaining elements need not be analyzed when plaintiff hasn't demonstrated a reasonable likelihood of success on the merits). Accordingly, the court finds that the earlier ruling wasn't erroneous, and there is no compelling reason to grant Comer's motion to reconsider. *Santamarina*, 466 F.3d at 571–72.

For these reasons, the motion to reconsider (ECF 39) is **DENIED**.

SO ORDERED on October 19, 2026.

*/s/ Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT